### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

|  |  |  |
|---|---|---|
| | : | |
| LINDA GIBBS | : | |
| | : | Civil Action No. 07-3604 (PGS) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CASWELL MASSEY, ET AL. | : | **OPINION** |
| | : | |
| Defendants. | : | **March 26, 2009** |
| | : | |

**SALAS, UNITED STATES MAGISTRATE JUDGE:**

In this employment discrimination action, Plaintiff Linda Gibbs seeks to amend her complaint to add a host of new claims against the parties, and in some instances, add parties to her host of claims. The Court finds that some of the proposed amendments have merit and others fail. Accordingly, for the reasons set forth below, the Court will grant in part, and deny in part Plaintiff's motion.

## I.   BACKGROUND

### A.   *Factual Background*[1]

Plaintiff Gibbs was employed by Defendant Caswell-Massey ("Caswell") from May 10, 1993 to December 2, 2006. She started at Caswell as a customer service representative. After three months, she was promoted to manager of retail stores and franchises. At the peak of her employment, Gibbs was responsible for approximately twenty stores and five franchises.

---

[1] The Court must accept as true all factual allegations pleaded, so this Court will recite the facts in that vein. *Brown v. Phillip Morris, Inc.*, 250 F.3d 789, 796 (3d Cir. 2001).

1

In the Spring of 2000, Gibbs was diagnosed with sleep apnea.  She advised Anne Robinson, the owner of Caswell, of her condition.  Caswell then began exploring if they could terminate Gibbs, and went so far as to consult with an attorney to develop a strategy to terminate her.

In January of 2003, Gibbs became pregnant.  Robinson began to treat her with hostility and raised the issue with Audrey Vasey, the CFO of Caswell.  Robinson complained that they were not able to fire Gibbs because two pregnant women in the 1990's had sued Caswell after being terminated.  Robinson took action against Gibbs, removing her from her office and giving her a smaller desk.  She also assigned her additional work without any increase in pay.  On July 20, 2003, Gibbs took medical leave due to complications with her pregnancy.  Her son Michael was born prematurely on July 28, 2003, only twenty-seven weeks into the pregnancy.  As a result, Michael remained hospitalized until November 2003.  Caswell nonetheless demanded that Gibbs return to work in September 2003 or risk losing her job.  She returned to work on September 22, 2003.  Upon her return, Robinson told Gibbs that her "free ride is over."  On Robinson's last day of work in late October 2003, she and Dave Bruzzi wrote a critical report of Gibbs and put it in her personnel file.

Upon her return to work, Gibbs had to fight Caswell for additional family leave time under the New Jersey Family Leave Act, because she was advised that her disability time and family leave time ran concurrently.  Caswell wanted to take care of Michael from November 2003 to February 2004 and she had to return to work nine days early due to Caswell's actions.

Edward J. Coleman became the president of Caswell in September of 2004.  Shortly thereafter, Gibbs apprised him of her sleep apnea.  From then until January 2006, Gibbs's

employment was without incident.  In January of 2006, when Gibbs became ill with bronchitis and an upper respiratory infection, she was treated with hostility and even though she had a doctor's note advising that she take a week off, she was only permitted to leave on Wednesday afternoon until Friday in order to be paid and avoid backlash.

In both March and May of 2006, Michael was hospitalized with pneumonia.  In May, Coleman expressed his displeasure at the situation and become hostile towards Gibbs.   In August of 2006, Gibbs told Caswell that she would need to take off three to four weeks for surgery related to two hernias.   In September of 2006, Gibbs advised Coleman and human resources that she'd have to take a day off to care for Michael.  When Gibbs returned to work, Coleman was outraged, and told Gibbs that she had too many medical issues with her son and that her job could be in jeopardy if she missed more work.

Gibbs's surgery was scheduled for November 3, 2006.  On November 1, 2006, Caswell changed insurance plans, and this resulted in Gibbs having to meet deductibles.  The change also did not permit her to stay in the hospital during surgery.  Gibbs raised this issue with Caswell – namely, that she would have scheduled her surgery prior to November 1 if she had known they were changing plans – and Caswell advised her that they would not make up the difference between the two types of insurance.  The day before the surgery on November 2, Gibbs was called into Coleman's office and was asked if she would finally listen to her doctors (implying that prior to that, she hadn't).  Gibbs told Coleman that her hernias were due to her pregnancy and her time off was due to these issues and was not vacation.  Gibbs had her surgery on the 3rd, but because she could not stay overnight, she went to the emergency room the next day to deal with complications.  Gibbs was out from work from November 3 to November 28.

3

During her leave period, Defendants Steven Cutler and his wife Cindy contacted Caswell and told representatives that Gibbs was stealing Caswell products and selling them. Apparently, this was retaliation for an event that transpired between Steven Cutler and Gibbs's husband. In any event, on November 27, 2006, Caswell cancelled Gibbs's 401(k) plan. On November 28, Gibbs was told she could be suspended without pay or immediately terminated unless Caswell could conduct a search of her home. A search ensued and Stacey Matushin, Coleman's administrative assistant and Caswell's human resource manager participated. Nothing illicit was found. On November 30, her health insurance plan was terminated. It is unclear from the complaint the exact day on which she was terminated, but she was in Caswell's employ until December 2, 2006.

### B.   Procedural History

Gibbs filed the instant lawsuit on June 25, 2007. Defendants removed the action to this Court on August 1, 2007. Plaintiff's original complaint contained ten counts: violations of the New Jersey Law Against Discrimination ("NJLAD"), the Family and Medical Leave Act ("FMLA"), breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the New Jersey Wage Act, conversion, intentional interference with contractual relations and/or prospective economic advantage, and defamation/slander *per se*/injurious falsehood.

The amended complaint seeks to add certain parties to certain claims, as well as add additional claims. Plaintiff seeks to name individual defendants under the NJLAD. Plaintiff adds both a "bad faith" claim and a claim for wrongful discharge in violation of public policy.

4

Next, plaintiff adds a claim for spoliation.  Plaintiff also adds claims for a "bias crime causing damage," and for malicious prosecution.  Additionally, Plaintiff claims intentional infliction of emotional distress, intentional or malicious harm to another (*prima facie* tort), malicious and/or negligent advice and/or misrepresentations causing harm, conspiracy to commit tort, and invasion of privacy.  Plaintiff also seeks to add a claim of "employer liability."

The Court will consider each of the additional claims in turn.

## II.   STANDARD OF REVIEW

A motion for leave to amend a complaint shall be freely given when justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15.  Although leave to amend the pleadings under Fed. R. Civ. P. 15 is granted liberally, the court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment."  *Id*.  Finally, the decision whether to grant or deny a motion for leave to amend rests "within the discretion of the District Court." *Id.*

"'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted.' " *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)).  To determine whether a proposed amendment is futile the Court applies the same standard as a motion to dismiss under Rule 12(b)(6). *Medpointe Healthcare, Inc. v. Hi-Tech Pharmacal Co., Inc.*, 380 F. Supp. 2d 457, 462 (D.N.J. 2005).  The Court therefore most accept all factual

allegations as true "as well as the reasonable inferences that can be drawn from them." *Brown v.*

*Phillip Morris, Inc.*, 250 F.3d 789, 796 (3d Cir. 2001).

When plaintiff asserts claims, they must provide sufficient notice to defendants of the

factual allegations that entitle them to relief as articulated by the Supreme Court in *Bell Atlantic*

*Corp. v. Twombly*.  As the Court stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss
> does not need detailed factual allegations, a plaintiff's obligation to
> provide the 'grounds' of his 'entitlement' to relief' requires more
> than labels and conclusions, and a formulaic recitation of the
> elements of a cause of action will not do.  Factual allegations must
> be enough to raise a right to relief above the speculative level.

127 S. Ct. 1955, 1964-65 (2007) (citations omitted).  The Third Circuit has emphasized that the

Court reaffirmed that Rule 8 still only requires a short and plain statement of claims and their

factual underpinnings.  *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).

However, there is now a "plausibility paradigm" for evaluating the sufficiency of complaints.  *Id.*

at 230.  "[F]actual allegations in the complaint must not be "so undeveloped that it does not

provide a defendant the type of notice of claim which is contemplated by Rule 8."  *Umland v.*

*PLANCO Financial Services, Inc.*, 542 F.3d 59, 64 (3d Cir. 2008) (quoting *Phillips*, 515 F.3d at

233).  Still, left in tact and harmony with *Twombly* is the notion that courts will read complaints

to determine if "under any reasonable reading. . . the plaintiff may be entitled to relief."  *Pinker v.*

*Roche Holdings, Ltd.* 292 F.3d 361, 374 n. 7 (3d Cir. 2002).

## III.  ANALYSIS

### A.    *Naming Individuals Under the NJLAD*

Plaintiff seeks to add an NJLAD claim as to defendants Coleman and Matushin.  There is

6

no direct *primary* individual liability under the NJLAD.  *See Cicchetti v. Morris Cty. Sheriff's Office*, 194 N.J. 563, 594 (2008).  However, individuals may be liable secondarily under an aiding and abetting theory of liability.  N.J.S.A. 10:5-12(e).  Aiding and abetting requires "active and purposeful conduct."  *Cicchetti*, 194 N.J. at 594.  The New Jersey Supreme Court in *Cicchetti* noted that it cited the Third Circuit's decision in *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95 (3d Cir. 1999) approvingly, in a previous case.  *Hurley* held that an individual would be liable under the NJLAD if "the party whom the defendant aids [performs] a wrongful act that causes injury; (2) the defendant [is] generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant [] knowingly and substantially assist[s] the principal violation."  *Id.* at 127.

The Court finds that the proposed amendment is sufficient to withstand a motion to dismiss.  First, as to defendant Coleman, plaintiff has properly pleaded the factual predicates for an NJLAD violation because she alleges that actively and purposefully harassed plaintiff due to her medical conditions (*see, e.g.*, Compl. ¶ 27) and that he knowingly and substantially assisted Caswell's primary violation.

As to defendant Matushin, defendants argue that the aiding and abetting language of the statute only applies to supervisors and cites *Cicchetti* and *Tarr v. Ciasulli*, 181 N.J. 70 (2004) in support.  This is a much thornier question than either party acknowledges.  As an initial matter, defendants' citation to the foregoing cases are inapposite, as neither discusses the issue squarely presented: may a non-supervisory employee be subject to aiding and abetting liability under the NJLAD?

The Third Circuit answered this question in the negative, albeit in the context of

predicting how the New Jersey Supreme Court would rule.  The Court held:

> We predict that, under New Jersey law, *a nonsupervisory employee cannot be held liable as an aider and abettor for his own affirmative acts of harassment*, because such affirmative acts do not substantially assist the employer in its wrong, which is its failure to prevent and redress harassment by individual employees. Rather, a nonsupervisory employee's harassment takes advantage of the employer's wrongful conduct; it is the employee who seems to be "aided and abetted" by the employer.  A supervisor, by contrast, may be liable as an aider and abettor for active harassment or knowing and willful inaction, because in either case the supervisor violates his or her duty as a supervisor to prevent and halt harassment.

*Hurley*, 174 F.3d at 129 (footnotes omitted) (emphasis added).  This clearly disposes of the issue, as there's no allegation or inference that can be made that Matushin was a supervisory employee. Accordingly, Plaintiff cannot amend on this count against Matushin.[2]

## B.      *FMLA and New Jersey Family Leave Act*

Plaintiff originally sought to name Coleman and Matushin in their individual capacities under the NJFLA.  She has now abandoned that claim.  (Pl. Br. at 9).  Plaintiff seeks to add an FMLA claim against Coleman in his individual capacity.  Defendants do not so contest.  That request will be granted.  Plaintiff also seeks to add an FMLA claim against Matushin.  It is this latter request which is problematic.

---

[2]The Court notes, however, the troubling nature of this conclusion.  It is true that the court of appeals has spoken in predicting New Jersey law, and that "a federal district court is bound by circuit court interpretations of state law absent a strong indication that the state's highest court would decide different."  *Jurinko v. Medical Protective Co.*, No. 03-4053, 2006 WL 1791341, at *4 n. 15 (E.D. Pa. June 23, 2006).  Such a "strong indication" of a contrary result is wanting.  However, Judge Cowen persuasively explained in dissent in *Hurley* that under the aiding and abetting statute *any* employee, be they supervisory or not, could be individually on the hook.  Judge Cowen grounded his conclusion in the plain text of the statute as would this Court were it writing on a clean slate. *Hurley*, 174 F.3d at 141 (Cowen, J., dissenting) ("This provision could not be more clear in creating liability for any person who aids and abets a violation of the act, whether the individual is a supervisor, a nonsupervisory employee, or even an individual who is not an employee of the entity that is principally liable for discrimination")

The only allegation against Matushin is that she conducted a search of plaintiff's apartment and that she "wrongfully used the false allegations of [the Cutlers] as a pretext for terminating Plaintiff's employment. . ." when in reality, she was terminated due to her medical condition.  (Compl. ¶¶ 33, 37).  Even under a liberal reading of plaintiff's complaint, Matushin only came into the picture in 2006.  The issues regarding her medical leave for her pregnancy, however, occurred in 2003.  Only individuals who exercise control over the employee's leave can be held individually liable under the FMLA.  *Devine v. Prudential Ins. Co. of Am.*, No. 03-3971, 2007 U.S. Dist. LEXIS 46856, at *95 (D.N.J. June 28, 2008).  There being no allegation (or evidence) of control by Matushin here, the motion to amend as to Matushin under the FMLA is denied.

**C.      *The Implied Covenant of Good Faith and Fair Dealing***

Plaintiff alleges that Caswell breached the implied covenant of good faith and fair dealing in her employment contract with it.  Under such a covenant, "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *Wade v. Kessler Inst.*, 172 N.J. 327, 340 (2002) (internal quotation, citations, and alterations omitted).   Read liberally, plaintiff's complaint states a valid claim.  In her breach of contract claim, the plaintiff alleges that the plaintiff had a contractual obligation to her as set forth in employee handbooks and manuals.  At this stage of the litigation, Plaintiff is entitled to establish that the handbooks did, in fact, create a valid contract pursuant to *Wooley v. Hoffman-La Roche, Inc.*, 99 N.J. 284, 297-98, *modified on other grounds*, 101 N.J. 10 (1985) (holding that an employment manual may modify an at-will employee's status by creating an implied contract).

In *Wooley*, there was no employment contract between the plaintiff Richard Wooley and his employer.  Wooley was eventually fired and brought suit claiming that there were implied promises in the company's employment manual, and that these promises created a binding, legally enforceable contract between Wooley and the company.  Specifically, Wooley argued that he could only be fired for cause and only after certain procedures were effected.  The Court agreed, stating that

> Given the facts before us and the common law of contracts interpreted in the light of sound policy applicable to this modern setting, we conclude that the termination clauses of this company's Personnel Policy Manual, including the procedure required before termination occurs, could be found to be contractually enforceable.

*Id.* at 297.  Of course, discovery will flesh out what was contained in the Caswell employee manual and whether or not the promises contained there constituted a legally enforceable contract. It is important to remember that Gibbs has a live breach of contract claim here.  The question before the Court is only whether Gibbs could recover for a breach of the implied covenant of good faith and fair dealing.  She has plainly stated a claim, as the *Wade* court specifically held that contracts under *Wooley* contain the implied covenant.  *Wade*, 172 N.J. at 340.  Therefore, because Gibbs has a cognizable breach of contract claim, so too does she a claim for breach of the implied covenant.  Plaintiff's motion on this count is granted.

**D.    *Bad Faith***

Plaintiff has amorphously pleaded a bad faith claim against Caswell.  Plaintiff contends that Caswell "failed to act in good faith and otherwise dealt unfairly with Plaintiff in connection with her employment and the termination thereof."  (Compl. Count 5 ¶2).  This claim is necessarily subsumed within the implied covenant of good faith and fair dealing.  *Berlin Medical*

*Asscs., P.A. v. CMI New Jersey Operating Corp.*, 2006 WL 2162435, at *9 (N.J. App. Div. Aug. 3, 2006). It is thus duplicative, and the motion to add this count is denied.

**E.     *Wrongful Discharge in Violation of Public Policy***

Plaintiff alleges that Caswell, Coleman, and Matushin "acted against clear mandates of public policy as expressed in . . . the FFMLA, the NJFLA, and N.J.S.A. 2A:53A-21." The Third Circuit, applying New Jersey law, has expressly held that relief under a public policy theory is unavailable where a plaintiff has coterminus statutory claims. *Lawrence v. Nat'l Westminster Bank of N.J.*, 98 F.3d 61, 73 (3d Cir. 1996). Here, the plaintiff has pleaded violations of both federal and state family leave acts as well as the LAD. The statutory remedies, where sufficiently pled, are coterminus. The motion on this claim is denied.[3]

**F.     *New Jersey Wage Act***

Plaintiff seeks to add the individual defendants under her Wage Act claim. The legislature has found the term "employer" to encompass "the officers of a corporation and any agents having the management of such corporation. . ." N.J.S.A. 34:11-4.1(a) There is an allegation that Coleman was at least an agent having management of the corporation, but none as to Matushin. She is only listed as the manager of the human resources department and as Coleman's administrative assistant. Even construed liberally, plaintiff's complaint does not allege, even barely, that Matushin was an agent in management – instead, she can only be reasonably construed as a non-supervisory employee. The motion as to Coleman is granted, but denied as to Matushin.

---

[3]Because the statutory claims against Matushin fail, *see supra*, it is arguable that the wrongful discharge claim could go forward. However, this claim cannot go forward as Matushin was a non-supervisory employee.

### G.    *Spoliation*

Plaintiff alleges that the defendants have "improperly and wrongfully destroyed diverted

records relevant to Plaintiff's claims. . ." (Compl. Count 9 ¶3).  Plaintiff's claim is inartfully

labeled, as New Jersey does not recognize the tort of spoliation.  *See Rosenblit v. Zimmerman*, 166

N.J. 391, 404-405 (2001).  However, New Jersey does recognize the tort of fraudulent

concealment of evidence.  *Id.* at 405-407.  The elements of that tort are:

> (1) That defendant in the fraudulent concealment action had a legal obligation to
> disclose evidence in connection with an existing or pending litigation
>
> (2) That the evidence was material to the litigation
>
> (3) That plaintiff could not reasonably have obtained access to the evidence from
> another source
>
> (4) That defendant intentionally withheld, altered or destroyed the evidence with
> purpose to disrupt the litigation; [and]
>
> (5) That plaintiff was damaged in the underlying action by having to rely on an
> evidential record that did not contain the evidence defendant concealed.

*Id.* at 406-407.

Plaintiff's proposed amendment fails to meet the heightened pleading standard under the

federal rules provided for claims grounded in fraud.  *See* Fed. R. Civ. P. 9(b).  Under the Rule,

fraud must be pleaded with particularity.  "[T]he requirements of rule 9(b) may be satisfied if the

complaint describes the circumstances of the alleged fraud with precise allegations of date, time,

or place *or* by using some means of injecting precision and some measure of substantiation into

their allegations of fraud."  *Bd. Of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*,

296 F.3d 164, 173 (3d Cir. 2002) (internal quotation marks and citation omitted).  There is not

the slightest bit of particularity with respect to the proposed amendments.  While under

*Foodtown* plaintiff need not show a "who," what," and "where," plaintiff must "inject[]
precision" or "some measure of substantiation" into the allegation.  Plaintiff's reference to the
destruction of "diverted records" is a vacant allegation that does not even begin to approach the
particularity requirement.  The motion on this claim is denied.

### H.   *Bias Crime Causing Damage*

Inartfully pleaded in Count 10, plaintiff refers to N.J.S.A. 2A:53A-21(a) which provides
that

> A person, acting with purpose to intimidate an individual or group
> of individuals because of race, color, religion, gender, disability,
> sexual orientation, gender identity or expression, national origin, or
> ethnicity, who engages in conduct that is an offense under the
> provisions of the "New Jersey Code of Criminal Justice," Title 2C
> of the New Jersey Statutes, commits a civil offense.

This claim cannot go forward based on the great weight of authority throughout this
district and the state courts that where the NJLAD is pled as a cause of action, state common law
claims are preempted.  *See, e.g.*, *Metzler v. Am. Transp. Group*, No. 07-2066, 2008 U.S. Dist.
LEXIS 10562 (D.N.J. Feb. 13, 2008) (holding that the NJLAD provides all the remedies
available in common law tort actions); *Toscano v. Borough of Lavallette*, No. 04-4412, 2006 WL
1867197 (D.N.J. June 30, 2006) ("[a] supplementary common law cause of action is not allowed
when the NJLAD provides a remedy for the wrong"); *Quarles v. Lowe's Home Ctr.*, No.
04-5746, 2006 WL 1098050 (D.N.J. March 31, 2006) (same).  In all of these cases, common law
claims were not allowed to go forward because plaintiffs all brought claims under the NJLAD.
Importantly, the state courts agree.  *Catalane v. Gilian Instrument Corp.*, 271 N.J. Super. 476,
492 (App. Div. 2006) ("supplementary common law causes of action may not go to the jury
when a statutory remedy under the LAD exists").  Because plaintiff has statutory claims based on

the same operative facts as this bias crime claim, the motion must be denied.

## I.   *Malicious Prosecution*

In Count 11 of the amended complaint, plaintiff alleges that Caswell, Coleman, and/or

Matushin "maliciously reported to the Edison Police and the New Jersey Division of

Unemployment" that Gibbs committed theft and attempted to have the police file criminal

charges.

To prevail on a claim for malicious prosecution, a plaintiff must prove, by a

preponderance:

> (1) that the criminal action was instituted by the defendant against
> the plaintiff, (2) that it was actuated by malice, (3) that there was
> an absence of probable cause for the proceeding, and (4) that it
> was terminated favorably to the plaintiff.  The plaintiff must
> establish each element. Upon failure to prove any one, the cause
> must fail. Each element is separable from the others, although
> evidence of one may be relevant with respect to another. For
> example, proof of lack of probable cause may be appropriate
> evidence from which to infer but not necessarily establish malice.

*Brunson v. Affinity Federal Credit Union*, 402 N.J. Super. 430, 438 (App. Div. 2008) (citations

omitted).

In the instant matter, because Gibbs was never formally charged by the authorities and

there were no adverse actions taken by the New Jersey Division of Unemployment, Gibbs

cannot sustain her burden.  *Cf. Skinner v. Spirit Airlines*, No. 211014, 1999 WL 33327048, at *1

(Mich. App. 1999) ("[i]n the absence of this critical element [of the initiation of prosecution],

plaintiff cannot sustain this action") (citing Prosser & Keeton, Torts (5th Ed.) § 119).  The

motion on this count is denied.

14

*J.*      *Intentional Infliction of Emotional Distress*

    Plaintiff directs this claim towards Caswell, Coleman, Matushin, and the Cutlers.  "[T]o establish a claim for intentional infliction of emotional distress ["IIED"], the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Buckey v. Trenton Saving Fund Soc.*, 111 N.J. 355, 366 (1988).  Defendants' conduct must be extreme and outrageous. *Id.*  Extreme and outrageous is defined as being "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement (Second) of Torts § 46 comment d).  The emotional distress must be "so severe that no reasonable man could be expected to endure it." *Id.* (quoting Restatement, *supra*, § 46 comment j.).

    As to Matushin and the Cutlers, the motion is granted.  Plaintiff has adequately pleaded as to them because she has described incidents – the accusation of theft, the reporting of the allegation to the police department, and the search of her home – that are for the factfinder to discern whether or not they rise to the level of being extreme and outrageous.  Plaintiff's allegations, that she "suffers and will in the future [] great pain in mind and body, incapacity to engage in usual and customary daily activities and employment, and is now and will in the future be obliged to undergo medical and other necessary care for relief," are sufficient at the pleading stage. *Cf. Wigginton v. Servidio*, 324 N.J. Super. 114, 132 (App. Div. 1999) (reinstating plaintiff's IIED claim where plaintiff showed that the reaction to the event "lasted a considerable period" after it).  *Wigginton* is instructive.  The court noted that the New Jersey Supreme Court in *Taylor v. Metzger*, 152 N.J. 490 (1998) had allowed an IIED claim to go

forward based on a single racial slur made in the workplace.  *Wigginton*, 324 N.J. Super at 130-31.  What changed the calculus in that case was the fact that the comment was uttered in the workplace.  Employees are entitled to greater protection in this context, as opposed to conduct towards a plaintiff by a "stranger on the street."  *Id.* at 131.

While this Court may be skeptical that plaintiff can fulfill the elements, or that she cannot show the requisite damages, plaintiff's allegations of the false accusations and the reporting of them to the police is enough to withstand a motion to dismiss at this time.  *Cf. Bishop v. Okidata*, 864 F. Supp. 416, 428 (D.N.J. 1994) (a skeptical court, holding that although plaintiff may not meet the high threshold for IIED claims, dismissal was inappropriate due to the allegations in the complaint); *see also Rivera v. Cracker Barrel Old Country Store, Inc.*, No. 02-4160, 2003 WL 21077965, at *6 (D.N.J. March 3, 2003) ("also rare is the dismissal of an intentional infliction of emotional distress claim on a motion to dismiss").  The Court is satisfied that the claims can go forward against Matushin, and the Cutlers based on the amended pleading.

The claims against Caswell and Coleman, for the same reason that the bias crime tort cannot go forward: Plaintiff's statutory remedy under the NJLAD preempts her claims under the common law.  Because plaintiff has statutory claims based on the same operative facts as the IIED claim, the motion to amend as to Caswell and Coleman are denied.[4]

_____

[4]The Court notes that it may seem, at first blush, internally inconsistent to allow the breach of the implied covenant of good faith claim to go forward based on this principle.  But the factual predicates underlying the NJLAD claim and this common law claim are different.  Whereas the implied covenant claim is dependent on the existence of a valid, legally enforceable contract, a claim for IIED is not.

**K.**      **Prima Facie *Tort***

In *Richard A. Pulaski Construction Co. v. Air Frame Hangars*, 195 N.J. 457 (2008), the New Jersey Supreme Court assumed, without deciding, that this amorphous tort may be available, but that it is strictly a "gap-filler."  "[T]he availability of the prima facie tort doctrine is limited exclusively to those instances of intentional and culpable conduct unjustified under the circumstances that, as a threshold matter, do not fall within a traditional tort cause of action." *Id.* at 460.  Plaintiff has tort remedies, as well as statutory remedies, and the court in *Pulaski* countenanced the holding in *Silvestre v. Bell Atl. Corp.*, 973 F. Supp. 475, 485 (D.N.J. 1997 (the *prime facie* tort may only be utilized when no statutory remedy exists, either). Plaintiff here has both statutory and tort remedies.  Therefore, the motion on this claim will be denied.

**L.**      **Negligent Misrepresentation**[5]

Plaintiff has alleged negligent misrepresentation against Caswell, Coleman, Matushin, and the Cutlers.  The motion is denied on this claim, in its entirety.

"A cause of action for negligent misrepresentation may exist when a party negligently provides false information." *Karu v. Feldman*, 119 N.J. 135, 146 (1990). It requires that a statement was incorrectly made, negligently, and that the statement was justifiably relied upon to a plaintiff's detriment.  *Kuhnel v. CNA Ins. Cos.*, 322 N.J. Super. 568, 581 (App. Div. 1999). Plaintiff cannot pass the threshold here as, construing the complaint liberally, plaintiff's only related allegation on this claim is that the Cutlers told Caswell about the alleged theft.  There

_____

[5]To the extent that this claim also references "malicious" representation, the Court will construe the claim as one sounding in common law fraud, and will deny the motion as well, because as stated in the foregoing, this was not pled with any sort of particularity. Fed. R. Civ. P. 9(b).

was no misrepresentation *to* plaintiff herself.  Indeed, it follows that if one brings a claim for misrepresentation then whatever statement is made has to be directed at the plaintiff claiming harm.  Here, there were no such statements negligently made to the plaintiff.  They were directed towards others.

**M.    *Civil Conspiracy***

Plaintiff alleges civil conspiracy against all defendants.

A civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage."  *Banco Popular North America v. Gandi*, 184 N.J. 161, 177 (2005) (quoting *Morgan v. Union Cty. Bd. of Chosen Freeholders*, 268 N.J. Super. 337, 364 (App. Div. 1993)).  The keystone to a civil conspiracy claim is *not* the actual agreement; it is the underlying wrong which, absent the agreement, would by itself give rise to a cause of action.  *Gandi*, 184 N.J. at 177-78.

As an initial matter, plaintiff cannot maintain this claim against Coleman, Matushin, and Caswell.  It is well established that "an entity cannot conspire with one who acts as its agent." *General Refractories Co. v. Fireman's Fund Ins. Co.*, 377 F.3d 297, 313 (3d Cir. 2003).  A conspiracy may only exist between a corporation and its employee only "when the employees have acted for their sole personal benefit."  *Heffernan v. Hunter*, 189 F.3d 405, 412 (3d Cir. 1999).  Nothing that can be even gleaned from the pleadings suggests that Coleman and Matushin were acting for their own benefit.  The motion as to them must be denied.

18

The motion must also be denied as to the Cutlers and Caswell.  As the *Gandi* court held, it is the underlying wrong which gives rise to the cause of action for civil conspiracy.  Here, the underlying wrong, as it relates to the Cutlers and Caswell, is that plaintiff was terminated due to an accusation (which plaintiff claims was false) that she stole goods from Caswell.  While the conduct is troubling, if true, such would not give rise to a cause of an independent cause of action.  The only tort under which plaintiff could arguably recover[6] (as an independent matter) is wrongful discharge pursuant to public policy pursuant to *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58 (1980).

*Pierce* allows for claims against employers when a plaintiff can show "retaliation . . . based on the employee's exercise of certain established rights, violating a clear mandate of public policy."  *MacDougall v. Weichert*, 144 N.J. 380, 393 (1996).  "A salutary limiting principle is that the offensive activity must pose a threat of public harm, not merely private harm or harm only to the aggrieved employee."  *Mehlman v. Mobil Oil Corp.*, 153 N.J. 163, 187 (1998).  This Court thinks that the alleged underlying conduct by the Cutlers and Caswell is troubling, but that there is no specific public policy that forbids the conduct.  *Cf. Blizzard v. Exel Logistics North America, Inc.*, 02-4722, 2005 WL 3078175, at *15 (D.N.J. Nov. 15, 2005).  This sort of private harm only flowed to the plaintiff, and "[u]nless an employee at-will identifies a clear, specific expression of public policy, that employee may be discharged with or without cause."  *Id.*

---

[6]Of course, this Court has denied the motion to amend as to wrongful discharge as to Caswell because plaintiff has coterminus statutory claims.  This Court only uses this tort as an example to, at the outer boundaries, demonstrate that plaintiff has not alleged facts that would give rise to an independent wrong for purposes of alleging a civil conspiracy.

Thus, plaintiff cannot point to an independent harm that gives rise to a civil conspiracy action.  Accordingly, the motion is denied.

**N.**      ***Invasion of Privacy***

Plaintiff seeks to add a claim for invasion of privacy against Caswell, Coleman, Matushin, and the Cutlers.  Plaintiff has pleaded two theories (or, at least, that this court can construe as the theories based on the liberal pleading standard): first, that defendants unreasonably invaded her privacy in searching her home, and second, that defendants painted plaintiff in a false light.  The Court will evaluate the theories in turn.

*The search of her home*.  The search is grounded in the theory that the search was an intrusion upon plaintiff's seclusion in her home.  Courts in New Jersey have recognized this theory of liability.  *See Kinsella v. Welch*, 362 N.J. Super. 143, 156 (App. Div. 2003); *Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81, 94-95 (1992).  The *Kinsella* court adopted the Restatement's definition of this cause of action:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

362 N.J. Super. at 156 (quoting Restatement (Second) of Torts § 652B.  For the reasons set forth below, Plaintiff's claim is futile because it could not withstand a 12(b)(6) motion.

The linchpin of the intrusion element is that it must be committed without consent.  "[I]t is well accepted that the essence of any tort, civil or constitutional, is that it be offensive and committed *against one's will*."  *Jevic v. Coca Cola Bottling Co. of N.Y.*, No. 89-4431, 1990 WL 109851, at *8 (D.N.J. June 6, 1990) (emphasis added).  To intrude is thus to do so without

20

permission.  *See O'Donnell v. U.S.*, 891 F.2d 1079, 1083 (3d Cir. 1989).  Here, it is undisputed

that plaintiff gave permission to search her home.  While arguably it was consented to by

Plaintiff out of fear of being terminated, she still retained the choice, and thus one cannot say that

defendants intruded in her privacy without permission.  Under the caselaw and the plain text of

the Restatement, plaintiff cannot prevail under this theory.

> *The accusation of theft*.  The cause of action underlying this claim is false light invasion

of privacy.  "It is accepted in New Jersey that a cause of action exists for invasions of privacy

involving publicity that unreasonably places the other in a false light before the public."

*Romaine v. Kallinger*, 109 N.J. 282, 289 (1988) (internal quotation marks omitted).  The court

adopted the Restatement's recitation of the elements of the tort.  The elements are met when

> [o]ne . . . gives publicity to a matter concerning another that places
> before the public in a false light [and] (a) the false light in which
> the other was placed would be highly offensive to a reasonable
> person, and (b) the actor had knowledge of or acted in reckless
> disregard as to the falsity of the publicized matter and the false
> light in which the other would be placed.

*Id.* at 294 (quoting Restatement (Second) of Torts § 652E).  "The publicized material in a false-

light claim must constitute a major misrepresentation of [plaintiff's] character, history, activities

or beliefs."  *Romaine*, 109 N.J. at 295.  The misrepresentation also must be "highly offensive to a

reasonable person."  *Id.*

The Court find that this false light claim can only go forward against the Cutlers.  Barely

meeting the *Twombly* standard, the Court construes the complaint to state that the Cutlers put

plaintiff in a false light by accusing her (falsely, as plaintiff alleges) of theft.  The Court concludes

that this does qualify as a "major misrepresentation" and that, if true, it would be "highly

offensive to a reasonable person."  To cast aspersions on a person in a context where the end

result may be a stint in jail surely satisfies the "highly offensive" standard.  This sort of major

misrepresentation of plaintiff's character, if true, is the type of conduct that fits neatly into the

contours of the tort.  *See, e.g.*, *Dubinsky v. United Airlines Master Exec. Council*, 708 N.E.2d 441,

452 (Ill. App. 1999) (finding plaintiffs' allegations of false light sufficient at the pleadings stage

where statements accused plaintiffs of criminal conduct); *Miline v. Filene's, Inc.*, No.

CV054018766S, 2007 WL 806378, at *5 (Conn. Sup. Ct. Feb. 21, 2007) (plaintiff adequately

pleaded false light tort where former employer accused her of workplace theft).  That all

notwithstanding, the only question is if plaintiff has stated a valid claim, not whether she can

prove it.  Accordingly, the motion as to the Cutlers will be granted.  As to the other Defendants,

the motion is denied.

### O.    *Defamation and Injurious Falsehood*

Plaintiff originally only named the Cutlers on this count, and now seeks to add Caswell,

Coleman and Matushin.  The amendment fails because the complaint fails to set forth with

particularity exactly what defamatory words were uttered, the source of the defamatory

statements, and the fact of their publication.  *See F.D.I.C. v. Bathgate*, 27 F.3d 850, 875 (3d Cir.

1994); *see also Zoneraich v. Overlook Hosp.*, 212 N.J. Super. 83, 101 (App. Div.), *certif. denied*,

107 N.J. 32 (1986) ("[i]n the case of a complaint charging defamation, plaintiff must plead facts

sufficient to identify the defamatory words, their utterer and the fact of their publication.... A

plaintiff may be permitted to bolster a defamation cause of action through discovery, but not to

file a conclusory complaint to find out if one exists").  Here, the proposed amendment is vague

and conclusory as to how the three new proposed defendants on this claim defamed the plaintiff.

22

Under *Zoneraich* and perhaps more importantly, *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965.  Here, they do not.

The injurious falsehood claim fails for the same reason.  To state a claim for injurious falsehood (also referred to as trade libel), one must plead the elements properly.  To establish a claim, a plaintiff "must prove publication of a matter derogatory to the plaintiff's property or business, of a kind designed to prevent others from dealing with him or otherwise to interfere with plaintiff's relations with others." *Patel v. Soriano*, 369 N.J. Super. 192, 246 (App. Div. 2004).  Proof of damages is an essential element of the tort.  *Id.* at 247.  Akin to her pleading of defamation, plaintiff has not pleaded this tort with enough specificity to put the defendants on notice as to their potential liability.  The only hook in the complaint on this count is that the defendants' conduct "also constitutes injurious falsehood."  Bootstrapping the injurious falsehood claim to the defamation claim does not do plaintiff any good here, as plaintiff must at the bare minimum plead facts that would give rise to the cause of action, rather than make a blanket assertion that certain conduct constitutes a tort.  In *Twombly*, the Court stated that formulaic recitations of the elements of a cause of action will not suffice.  *Twombly*, 127 S. Ct. at 1964-65.  It stands to reason then that a complaint that does not even purport to allege facts that (even with all inferences in the plaintiff's favor) comprise the elements of a cause of action do not suffice, either.  The motion to amend as to this claim will be denied.

**P.     *Employer Liability***

New Jersey, of course, recognizes the doctrine of respondeat superior, *Abbamont v. Piscataway Tp. Bd. Of Ed.*, 138 N.J. 405 (1994), but this Court will follow the approach of Judge

Hillman and deny the amendment to add "employer liability"as a separate claim.  This claim is a redundancy, as plaintiff has already availed herself of it by bringing actions against the individual employees and Caswell itself.  *See Allia v. Target Corp.*, No. 07-4130, 2008 U.S. Dist. LEXIS 29591, at *18 (D.N.J. Apr. 10, 2008).  Respondeat superior is already a basis of liability, at the very least, for her statutory claims.  Asserting employer liability as a cause of action is superfluous.  The motion will be denied.

## IV.   CONCLUSION

To recapitulate this Court's holdings: the motion to add Coleman under the NJLAD is granted, but denied as to Matushin; granted as to the FMLA claim as against Coleman, but denied as against Matushin; granted as to the breach of the implied covenant of good faith and fair dealing count; denied as to bad faith; denied as to wrongful discharge in violation of public policy; granted as to Coleman on plaintiff's Wage Act claim but denied as to Matushin; denied as to fraudulent concealment; denied as to the bias crime tort; denied as to malicious prosecution; granted on the IIED claim as against Matushin and the Cutlers, but denied as against Caswell and Coleman; denied as to prima facie tort; denied as to negligent misrepresentation; denied as to civil conspiracy; granted only as to the Cutlers on invasion of privacy and denied as to the rest; denied as to defamation and injurious falsehood; and, finally, denied as to employer liability.

*s/ Esther Salas*
**ESTHER SALAS**
**UNITED STATES MAGISTRATE JUDGE**